# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Salys Dorian Villaverde-Perez,

    Petitioner

v.

John Mattos, et al.,

    Respondents

Case No.: 2:26-cv-01300-JAD-EJY

**Order Granting Habeas Petition and Denying as Moot Motion for Temporary Restraining Order**

[ECF Nos. 7, 12]

Petitioner Salys Dorian Villaverde-Perez is a Cuban citizen who arrived in the United States in 1995 and was ordered removed in 1998. After spending more than a year in custody after his removal order became final, he was released because Immigration and Customs Enforcement[1] (ICE) agents were unable to secure his removal to Cuba. In 2004, Villaverde was convicted and sentenced for murder and robbery, but the Nevada Board of Pardons Commissioners unanimously granted him a pardon for his murder conviction in June 2025. On April 22, 2026, Villaverde reported to his parole officer and was detained by ICE. He's been in immigration custody at the Nevada Southern Detention Center ever since.

On April 27, 2026, Villaverde filed a pro se petition for a writ of habeas corpus seeking his release from custody. The court appointed counsel, who filed a first amended habeas petition and a motion for a temporary restraining order seeking Villaverde's immediate release. Villaverde argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of

---

[1] ICE has had different institutional names throughout the years. To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Villaverde was ordered removed.

supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights. Villaverde's habeas petition was fully briefed on May 26, 2026, and a day later Villaverde filed a motion for a temporary restraining order seeking his release.

I grant Villaverde's habeas petition. Though he has been detained for only a month this time around, Villaverde was in immigration custody following entry of his 1998 removal order for 534 days. He has shown that there is no good reason to believe that his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise. Villaverde has also demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause and that ICE's notice that he may be deported to Mexico doesn't satisfy the due-process protections that must accompany third-country removal.

So I order Villaverde's immediate release, subject to reasonable conditions of supervision. I also prohibit the respondents from re-detaining Villaverde absent a demonstrable change in circumstances in ICE's ability to remove him. And I prohibit the respondents from removing Villaverde to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief from that removal. Finally, because resolving the petition affords Villaverde the relief he seeks, I deny as moot his motion for a temporary restraining order.

**Background**

Villaverde is a Cuban citizen who was paroled into the United States via Miami in 1995.[2] In 1998, he was convicted of felony possession of a controlled substance and, in September of

---

[2] ECF No. 8-1.

that year, he was ordered removed to Cuba.[3]  His removal order became final on August 3, 1999, and he was held in ICE custody until January 18, 2001—for 534 days—while ICE attempted to effectuate his removal.[4]  Those efforts were fruitless, so Villaverde was released on an order of supervision.[5]  In 2004, Villaverde was sentenced to life in prison without parole for murder and robbery.  But in 2025, the Nevada Board of Pardons Commissioners unanimously granted him a pardon for the murder conviction "due to his extraordinary rehabilitative efforts while in prison and [his] lesser role in the crime."[6]  He was released on parole for the robbery charge in August 2025.[7]

On April 22, 2026, Villaverde was arrested by ICE agents when he reported to a scheduled parole meeting.[8]  He was given a notice explaining his obligation to assist in his removal efforts and he informed an ICE officer that he is a Cuban national and that it would be nearly impossible to obtain travel documents to return to Cuba, but that he would try his best.[9]  Two days later, Villaverde was given a notice informing him that ICE intends to deport him to Mexico.[10]  He refused to sign the notice and, on April 29, 2026, he was given notice that he had failed to comply with removal efforts.[11]  And on May 13, 2026, Villaverde received a notice of

---

[3] *Id.*

[4] *Id.*

[5] *Id.*; ECF No. 8-2.

[6] ECF No. 7 at 5.

[7] *Id.*

[8] ECF No. 8-1.

[9] ECF No. 7 at 6.

[10] ECF No. 8-2 at 6.

[11] *Id.* at 4.

revocation of his release on supervision, but it did not inform Villaverde of the reason for the revocation.[12]

### Discussion

**A.     This court has jurisdiction over Villaverde's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[13]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[14]

**B.     Villaverde has shown that he is entitled to relief on his prolonged-detention claim.**

*1.     The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[15]  During that 90-day period,

---

[12] ECF No. 9 at 15.  The government claims in its response that his supervision was revoked because of his 2004 convictions, though it does not contest that Villaverde wasn't told that.  *Id.* at 2, 3.

[13] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[14] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[15] 8 U.S.C. § 1231(a)(1)(B).

detention is mandatory.[16]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[17] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[18]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[19]

### 2.    *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[20]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[21]  It determined that six months of post-removal-period detention is presumptively reasonable.[22]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that

---

[16] 8 U.S.C. § 1231(a)(2)(A).

[17] *Zadvydas*, 533 U.S. at 682.

[18] 8 U.S.C. § 1231(a)(6).

[19] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[20] *Id.* at 690.

[21] *Id.* at 699.

[22] *Id.* at 701.

his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[23] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[24] And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[25]

> **3.** ***Villaverde has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.***

As of the date of this order, Villaverde has been detained for about a month since his most recent arrest. But he was also detained for 534 days after his final removal order was entered in 1999. The government contends that Villaverde's prior detention period is irrelevant to his prolonged-detention claim, though it doesn't provide any analysis to support that interpretation. It merely says that he was brought back into custody "for violating the terms of his [order of supervision] and to effectuate a removal to Mexico" and that his detention is mandatory "under 8 U.S.C. § 1227(a)(2)(A)(iii)."[26]

I reject the government's unsupported contention that Villaverde's prior detention isn't relevant to this analysis. Several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.[27] I agree with the reasoning of those courts. *Zadvydas* presumed

---

[23] *Id.*

[24] *Id.*

[25] *Id.* (cleaned up).

[26] ECF No. 9 at 3, 5.

[27] *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention");

that detention following removal could reasonably last six months. If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-month clock whenever it chooses to re-detain him. So I consider prior detention periods in my analysis.

Taking Villaverde's 1999–2001 detention into account, I find that Villaverde has been detained under his final removal order for more than six months as of the date of this order. So Villaverde bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[28] To meet that burden, Villaverde argues that his removal to Cuba is as unlikely now as it was in the early aughts. He also challenges the likelihood of his removal to Mexico, noting that he was not given an opportunity to raise fear-based claims before an immigration judge and, even if he was, there is no evidence that the government has communicated with Mexico about Villaverde's removal or that Mexico has agreed to accept him.[29] I find that Villaverde's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Villaverde's removal is foreseeable. It merely says it is planning to remove him to Mexico, but it provides no indication that removal is likely or reasonably foreseeable. It provides no evidence suggesting that Mexico is willing to accept a Cuban national who does not wish to be removed to Mexico.

---

*Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").

[28] *Zadvydas*, 533 U.S. at 701.

[29] ECF No. 7 at 16–17.

The government instead argues that Villaverde must be mandatorily detained until he is removed under 8 U.S.C. § 1227(a)(2)(A)(iii). But that provision states only that "[a]ny [noncitizen] who is convicted of an aggravated felony at any time after admission is deportable."[30] Contrary to the government's assertion, § 1227(a)(2)(A)(iii) does not "specifically prohibit[] release."[31] So, because the government has not shown that Villaverde's continued detention is statutorily authorized or that there is a significant likelihood of his removal in the reasonably foreseeable future, I grant his petition on this ground and order his release.[32]

### D.   Villaverde has shown that the government's third-country-removal procedures violate due process.

#### 1.   The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to. The first choice is a country "to which the [noncitizen] wants to be removed."[33] If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the

---

[30] 8 U.S.C. § 1227(a)(2)(A)(iii).

[31] ECF No. 9 at 2.

[32] I do not consider Villaverde's separate claim that his prolonged detention violates the Fifth Amendment's due-process clause. In *Zadvydas*, the High Court interpreted § 1231(a)(6) to prohibit prolonged detention to avoid the constitutional concerns raised by a different interpretation. I follow in the Supreme Court's footsteps and do not reach Villaverde's due-process arguments because he is entitled to the relief he seeks under *Zadvydas*'s statutory limitation.

[33] 8 U.S.C. § 1231(b)(2)(A).

noncitizen was born, and others.[34]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[35]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[36]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise a CAT challenge after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[37]  In all other

---

[34] 8 U.S.C. § 1231(b)(2)(E)(i–vi).

[35] 8 U.S.C. § 1231(b)(2)(E)(vii).

[36] 8 U.S.C. § 1231(b)(3)(A).

[37] ECF No. 8-7.

cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[38]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[39]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[40]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[41]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[42]

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

### 2. *ICE's third-country-removal policy violates due process, so any attempt to remove Villaverde to a third country must be preceded by notice and a meaningful opportunity to be heard.*

Villaverde contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[43] "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[44] The "fundamental features of due process" are notice and an opportunity to be heard.[45]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal. But it has come close. In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[46] It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[47] And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-

---

[43] ECF No. 7 at 21–22. Villaverde also challenges the policy under the Administrative Procedure Act. In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process. *See id.* at 20. Because Villaverde's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[44] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[45] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[46] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[47] *Id.*

removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[48]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[49]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[50]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[51]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that

---

[48] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

[49] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[50] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[51] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

12

situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

The government asserts that it intends to remove Villaverde to a third country and that it has provided notice of that removal.  The notice, provided in Villaverde's native Spanish language, states only that ICE intends to deport him to Mexico.[52]  That notice may fulfill one half of the due-process requirement, but there is no indication that Villaverde was told that he could seek asylum or withholding or any other fear-based relief from his removal.  So I find that removal to Mexico based on the notice alone would violate Villaverde's due-process right to an opportunity to be heard and contest his third-country removal.[53]  I thus grant Villaverde's petition on this ground, and I prohibit the government from removing Villaverde to Mexico without first complying with the notice-and-hearing requirements established above.

## Conclusion

IT IS THEREFORE ORDERED that petitioner Salys Dorian Villaverde-Perez's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 7] is GRANTED**.  Petitioner

---

[52] ECF No. 9 at 20.

[53] *See Andriasian*, 180 F.3d at 1041,

**Salys Dorian Villaverde-Perez must be released from detention within three days of this order, subject to reasonable conditions of supervision.**[54]

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Villaverde's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Villaverde's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Salys Villaverde absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Salys Villaverde to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Villaverde's motion for a temporary restraining order **[ECF No. 12] is DENIED** as moot.

---

[54] Villaverde also contends that ICE violated its own regulations when it arrested him without telling him that his release was revoked or giving him the opportunity to contest the reasons for his revocation. It is undisputed that Villaverde was given a notice of revocation in mid-May, but that notice did not give a reason. The government contends in its response that Villaverde's order of supervision was revoked in 2026 because his 2004 murder conviction violated his supervision conditions. That seems like a post hoc rationalization for Villaverde's arrest, but I find that I need not address this claim because Villaverde's release provides the relief he seeks and I cannot conclude that allowing ICE to impose new supervision conditions (as compared to those that were imposed more than two decades ago) would violate Villaverde's rights.

14

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 1, 2026

15